### Commonwealth v. Lacey.

(Decided April 28, 1914.)

### Appeal from Hickman Circuit Court.

1. False Pretenses—Obtaining Signature to Note.—Where a person, by falsely representing himself to be the agent of an insurance company, obtained from the person to whom the false represen-

tation was made a promissory note, with the intent to commit a fraud upon the maker of the note, he was guilty of an offense under Section 1208 of the Kentucky Statutes.

2. False Pretenses—Obtaining Signature to Note—Sufficiency of Indictment.—An indictment, charging that "A," by falsely representing himself to be the agent of a life insurance company and .authorized to sell its stock, when in fact he was not, and on the faith of this representation, which was believed by the maker of the note, secured his signature thereto, which he could not have done except for the fact that the maker believed the representations to be true, and further charging that the representations were made with an intent to commit a fraud upon the maker of the note, was a good indictment under the statute. When, by false statements, the signature to any instrument, the false making of which would be a forgery, is secured by fraud, this constitutes an offense against the statute, without regard to the value of the instrument or the purpose for which the fraud was practiced, and without reference to whether the party defrauded actually or ultimately suffered loss.

3. False Pretenses—Evidence Not Sufficient to Sustain Indictment. —Where a person, representing himself to be the agent of an insurance company and authorized to sell its stock, delivered the stock that he agreed to sell and otherwise did all that he agreed to do, the court properly directed a verdict for the defendant, as the evidence showed that the statement that he was authorized by the company as an agent to sell the stock, was substantially true.

JAMES GARNETT, Attorney General,   R. L. SMITH, Commonwealth's Attorney, for appellant.

ROBBINS & ROBBINS and JOE W. BENNETT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Under an indictment charging the appellee, Lacey, with obtaining from C. C. McAlister a note for one thousand dollars by falsely and fraudulently representing that he was the agent of the Tennessee Life Insurance Co., the parties went to trial before a jury. At the conclusion of the evidence for the Commonwealth the trial judge directed a verdict for the defendant, and the Commonwealth appeals for the purpose of having the law applicable to this class of cases determined by this court.

A general demurrer to the indictment was overruled, but in behalf of the appellee it is now insisted that the indictment was not sufficient, and, therefore, the court should have sustained the demurrer. The indictment was found under section 1208 of the Kentucky Statutes, providing that:

"If any person by any false pretense, statement or token, with intention to commit a fraud, obtain from another money, property or other thing which may be the subject of larceny, or if he obtain by any false pretense, statement or token, with like intention, the signature of another to a writing, the false making whereof would be forgery, he shall be confined in the penitentiary not less than one nor more than five years," and charged that:

"W. C. Lacey did by falsely and feloniously pretending and representing to C. C. McAlister that he represented the Tennessee Life Insurance Company, which was a corporation engaged in the Life Insurance business in the State of Tennessee by the laws of said State of Tennessee; and by so representing that said W. C. Lacey was the agent of the said Tennessee Life Insurance Co., to the said C. C. McAlister, did obtain from the said C. C. McAlister a note for $1,000.00, signed by the said C. C. McAlister and made payable to the said W. C. Lacey, and when in truth and in fact the said W. C. Lacey was not the agent of the said Tennessee Life Insurance Co., neither did he represent them in any respect, nor was he authorized to sell stock for said company by said company; and by reason of defendant's false representations to the said C. C. McAlister that the said W. C. Lacey was the agent of the said Tennessee Life Insurance Co., and that he represented them and was authorized by said company to sell said stock, he did obtain from the said C. C. McAlister the said $1,000.00 note; said statements, when made by defendant to said C. C. McAlister, were false and known by the defendant to be false, and the said C. C. McAlister would not have delivered said note to the said W. C. Lacey except for the fact that he believed said representations to be true; and said false representations were made by the defendant with the intent to commit a fraud upon C. C. McAlister.

We think this indictment stated an offense under that part of the statute providing that any person shall be guilty who by false pretense, with the intention to commit a fraud, obtains the signature of another to a writing the false making whereof would be forgery. Under this statute, if the defendant, by falsely representing himself to be the agent of the Insurance Company, and authorized by it to sell its stock, procured, with the intention to commit a fraud, the signature of

McAlister to the note described in the indictment, he committed an offense against the statute. It was not necessary that the indictment should have charged that the representations that induced McAlister to execute and deliver the note were material, or that McAlister suffered or might thereafter suffer any loss or damage on account of signing the note.

It is the mere act of obtaining, by false pretense or statement, with the intention to commit a fraud, the signature of another to a writing, the false making whereof would be a forgery, that constitutes the offense, and it is not essential to a good indictment that it should do more than state the facts constituting the statutory offense with such certainty as to enable the defendant to know the nature of the offense charged against him and to negative by special averments the matter as to which the alleged false pretense or statement was made: Commonwealth v. Sanders, 98 Ky., 12; Commonwealth v. Caldwell, 121 S. W., 480; Commonwealth v. Nunnelly, 124 S. W., 313.

It is not a light matter for one to falsely represent himself as the agent of a corporation or an individual when on the faith of such a representation he induces another party to execute to him a note or other writing. McAlister, for example, might have been entirely willing to deal with Lacey as the agent of the Tennessee Life Insurance Co., when he would not have been willing to deal with him as an individaul. He might have been willing to execute a note to Lacey believing him to be acting in the capacity of an agent for this Company, when he would not have been willing to and would not have executed the note if he had known that Lacey was not the agent of the company or authorized to sell its stock.

Under the authorities it cannot be doubted that it is a false pretense and a fraud for a person to go about the country representing himself to be the agent of some corporation or some individual when by reason of this representation he is enabled to secure property or signatures to instruments of writing that he could not have secured except for the representation and the belief of the defrauded party that it was true. The books are full of illustrative cases on this subject. In Bishop's New Criminal Law, 8th Ed., Vol. 2, Sec. 438, the author, in citing examples of false pretenses, says:

"The representation may be concerning his business, situation, or standing in life; as, in the instance already mentioned of pretending to be a member of the University. So where the defendant said untruly that he was a captain of the Fifth Dragoons, the indictment was held good. And the false pretenses of carrying on an extensive business as auctioneer and house agent, of being a chaplain in the army in need of money, and of being a married woman living with her husband and authorized to pledge his credit, while in fact she is living apart from him on a separate maintenance, have been severally held to be sufficient." Other illustrative cases are: McDowell v. Commonwealth, 136 Ky., 8; Commonwealth v. Ferguson, 135 Ky., 32; Commonwealth v. Scroggin, 22 Ky. L. R., 1338; Commonwealth v. Murphy, 96 Ky., 28.

The purpose of that feature of the statute now under consideration was to make it an offense to obtain by false pretenses or false statements the signature of another to a writing, the false making of which would be forgery, and so when by such pretenses or statements a signature to any instrument, the false making of which would be a forgery, is procured with the intent to commit a fraud, this constitutes an offense against the statute, without regard to the value of the instrument or the purpose for which the fraud was practiced, and without reference to whether the party defrauded actually or ultimately suffers a loss. As said in People v. Genung, 11 Wendell, 18 (N. Y.) 25 Am. Dec., 594:

"The offense is complete when the signature is obtained by false pretenses with intent to cheat or defraud another. It is not essential to the offense that actual loss or injury should be sustained." To the same effect are: Com. v. Coe, 115 Mass., 481; People v. Bryant, 119 Cal., 595; People v. Cook, 41 Hun (N. Y.) 67; Lowe v. State, 111 Ga., 650.

Turning now to the evidence, we find that McAlister executed and delivered to the appellee a promissory note in form as follows: "On January first after date I promise to pay to the order of W. C. Lacey one thousand dollars, negotiable and payable at the Citizens' Bank of Water Valley, Kentucky, bearing six per cent interest. Feb. 28, 1912. C. C. McAllister." And that Lacey at the same time delivered to McAlister this receipt:

"Received of C. C. McAlister the sum of one thousand dollars in full for four shares of the capital stock and

subscribed surplus of the Tennessee Life Insurance Co., at the price of $250.00 per share, under the terms of signed application of even numbers herewith. W..C. Lacey, Agent.''

Lacey also gave McAlister the following writing: ''One year from date I will re-sell this stock and refund the money with 10 per cent added if so desired.''

McAlister testified that Lacey told him ''he was selling stock for the Tennessee Life Insurance Co., of Nashville, Tenn.'' That ''he was agent for the Company and was selling its stock.'' Asked what induced him to give him this note, he said: ''Because he represented himself as an agent of the Company. If it had not been for that I would not have done it. I relied on his statement that he represented the Company and that he would deliver a thousand dollars' worth of stock, or the Company would.''

It further appears from his evidence that the note was to be placed in the Water Valley Bank and that the stock was to be sent to this bank for delivery to McAlister when he paid the note. That he went to the bank some time afterwards to pay the note but the stock was not there, and that was the only reason why the note was not paid. That some time afterwards when the stock had been sent to the bank to be delivered upon the payment of the note, he refused to pay the note or take the stock, because he had learned that it was not worth as much as he had agreed to pay for it.

J. C. Franklin, another witness for the Commonwealth, testified that he was the president of the Insurance Company. Asked, ''Was Lacey ever authorized by this Company to sell their stock?'' he answered, ''Not that I have any recollection of.'' He further testified that the four shares of stock exhibited to him at the trial was genuine stock in the Company and had been issued by the Company to McAlister. It further appears from his evidence that some shares of stock in the Company had been placed in the hands of a broker in Nashville for sale, and that the four shares issued to McAlister were issued in lieu of four shares that had been originally issued to some other person and afterwards taken in by the Company and the four shares to McAlister issued in their place. He also stated that agents to sell stock for the Company were appointed by W. E. Nelson, Manager of Agencies. It also appears from his evidence that the receipt given by Lacey to McAlister was written on sta-

tionery printed for the Company and furnished to their general agents to be given to sub-agents.

We do not think this evidence was sufficient to establish that Lacey was not an agent for and authorized to sell stock for the Company. It is shown that agents to sell stock were appointed by the Manager of Agencies, whose evidence does not appear in the record. That the stock that Lacey sold to and agreed to and was ready and willing to deliver to McAlister had been issued by the Company in a legitimate business way and was the identical stock that McAlister had purchased and that the writings evidencing the transaction were written on stationery of the Company.

Under this evidence, it appears that Lacey did all that he agreed to do, and it is further apparent that although he may not have been directly appointed agent by Franklin as president, that he had been authorized by some person having authority so to do to sell stock for the Company. So that the statement that he was authorized by the Company as an agent to sell the stock was substantially true. The evidence did not support the charge in the indictment and the court properly directed the discharge of the defendant.

Affirmed.