## Commonwealth v. Mirandi.

(Decided May 17, 1932.)

BAILEY P. WOOTTON, Attorney General, and E. POE HARRIS, Commonwealth's Attorney, for appellants.

WAUGH & HOWERTON and BLAIR & BLAIR for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Reversing.

The commonwealth appeals from the judgment of the Boyd Circuit court sustaining a demurrer to an indictment found under section 1208 of the Statutes, which, in part, makes it an offense for any person to obtain by any false pretense, statement, or token, with intention to commit a fraud, the signature of another to a writing, the false making whereof would be a forgery. In brief, the appellee is charged with a violation of this statute because, as it is claimed, he obtained from John S. Wellman his signature to an offer for an agreement to exchange a farm Wellman owned in Ohio for certain urban real estate in Huntington, W. Va., owned by Oran Adkins, under the false pretense and representation made by the appellee, a real estate agent, to the effect that Adkins was the owner of a good fee-simple and un-incumbered title to the Huntington real estate.

It is argued that the trial court correctly sustained the demurrer to the indictment first on the ground that, although in the accusatory part of the indictment the appellee is charged with making the false pretenses set out in the indictment "with intention to commit a fraud," there is no such allegation concerning his intention in the descriptive part of the indictment. This contention is without merit, for in the descriptive part of the indictment it is alleged that appellee "Knowingly, falsely, fraudulently and feloniously" made the representations which are the foundation of this prosecution.

In the case of Commonwealth v. Gregory, 121 Ky. 458, 89 S. W. 477, 28 Ky. Law Rep. 407, this court said:

> "The words 'fraud' and 'fraudulently' have a well-defined and known meaning in law. Appellee is presumed to and must have known that by the use of the word 'fraudulently,' as used in the statute and indictment, he was charged with destroying this corner tree with the wrongful intent and purpose of obtaining an unfair advantage and securing for

himself or another the lands or property of some other person.''

And so here. By the use of the word ''fraudulently'' the appellee is presumed to and must have known that he was charged with making the representations he is alleged to have made with the intention and purpose of committing a fraud.

It is next contended that the court correctly sustained the demurrer to the indictment because the indictment is silent concerning the laws of Ohio. It is argued that, as the offer of Wellman concerned real estate located in Ohio, its validity, although it may have been executed in Kentucky, as it was, depended on the laws of Ohio; that the instrument, the false making of which is punishable under the statute, must be one having some legal efficacy, and that inasmuch as the courts of this state cannot take judicial notice of the laws of a sister state, the absence of allegations in the indictment as to what the law of Ohio was at the time of this transaction concerning an offer of the character here involved, the court cannot know or say that the offer had any legal efficacy; and that therefore the indictment was and is bad.

While in the earlier part of the very lengthy indictment it is alleged that the writing to which the signature of Wellman was procured was one where he ''undertook, promised, agreed and legally obligated himself'' to sign and execute a deed to Adkins, it is true that this allegation, without more, is bad as being but the legal conclusion of the pleader. However, later on in the indictment it is alleged that the grand jury was unable to set forth the writing which Wellman signed in hæc verba because it did not have the writing before it, for which reason it could but set forth the substance of that writing, which was that Wellman should and would sign, acknowledge, and deliver to Adkins a deed to the Ohio property for the consideration, the details of which are set out fully in the indictment. There is no charge in the indictment at this point that Adkins ever accepted this proposition. Indeed, later on in the indictment it is averred that the grand jury did not know whether Adkins ever signed this agreement or not. Hence we see that the writing which Wellman is said to have signed is not a legal obligation to convey, but only an offer to convey the Ohio farm for the consideration as detailed in the indictment.

Were this property of Wellman's located in Kentucky, there can be scarce doubt that the indictment would be sufficient.

In Commonwealth v. Lacey, 158 Ky. 584, 165 S. W. 971, 972, in holding an indictment under section 1208 of the Statutes sufficient, we said:

> "The purpose of that feature of the Statute now under consideration was to make it an offense to obtain, by false pretenses or false statements, the signature of another to a writing, the false making of which would be forgery, and so when by such pretenses or statements a signature to any instrument, the false making of which would be a forgery, is procured with the intent to commit a fraud, this constitutes an offense against the statute, without regard to the value of the instrument or the purpose for which the fraud was practiced, and without reference to whether the party defrauded actually or ultimately suffers a loss."

It is true that the instrument to which the signature is obtained must be one apparently of legal efficacy, or foundation of legal liability. Cf. Robinson v. Commonwealth, 217 Ky. 129, 288 S. W. 1044. But an offer to convey real estate, which upon its acceptance by the adverse party may be turned into a binding contract, is such an instrument. Therefore, the obtention of a signature by false pretense to such a writing comes squarely within the statute.

Does it matter though that Wellman's real estate, instead of being located in Kentucky, was located in Ohio? Admittedly the laws of a sister state are facts to be alleged and proved as are any other necessary and essential facts, and it is true that a contract to convey realty is valid or not as the laws of the state where the realty is located may hold it so, or not. But it is also true that while one state will not take judicial notice of the statutes of a sister state, the presumption is that the common law of a sister state is the same as the common law of this state. United States Cast Iron Pipe & Foundry Co., et al. v. Vogt Machine Co., 182 Ky. 473, 206 S. W. 806. Now at common law an oral agreement to convey realty was valid (see 27 R. C. L. 315: Duvall v. Guthrie, 3 Bibb 532), and the essentials of such a contract were the essentials of any ordinary contract. Of

course, it is well known that almost all, if not indeed all, the states have adopted in one form or another statutes of fraud, and that contracts to convey realty come within the purview of such statutes. But the validity of a contract to convey real estate does not depend on a compliance or noncompliance with the requirements of the statutes of fraud. These statutes are held to be simply part of the law of procedure and remedy, and are to be applied according to the law of the forum rather than the law of the place. Heaton v. Eldridge, 56 Ohio St. 87, 46 N. E. 638, 36 L. R. A. 817, 60 Am. St. Rep. 737. In Boone v. Coe, 153 Ky. 233, 154 S. W. 900, 901, 51 L. R. A. (N. S.) 907, this court refused to enforce an oral lease which under our statute of frauds should have been in writing although such lease was valid by the law of Texas, where the land subject to the lease lay. We said: "Under the rule in force in this state the statute of frauds relates to the remedy or mode of procedure, and not to the validity of the contract." See, also, Campbell v. Preece, 133 Ky. 572, 118 S. W. 373. It follows that a noncompliance with the Ohio statute of frauds would not make a contract relating to Ohio property in and of itself void, because, if the contract were undertaken to be enforced in Kentucky, and it complied with the Kentucky statute of frauds (Ky. Stats., sec. 470), the courts of this state would give effect to it. Therefore, as at common law, a contract to convey realty was valid if it complied with the essentials of any ordinary contract, and as we are, in this case, relegated to the presumption that the common law of Ohio is the same as that of this state, it follows that if the offer of Wellman to convey the Ohio lands was good, as indeed it was, under the common law of this state, it was good under the common law of Ohio. The offer then being valid, being executed in Kentucky, and being capable of being enforced by the lex fori in Kentucky, if accepted, it was an instrument apparently of legal efficacy and foundation of legal liability.

It results that the omission of allegations concerning Ohio law from the indictment did not render it defective, and the lower court erred in sustaining the demurrer to the indictment.

Its judgment is therefore reversed, with instructions to overrule the demurrer, and for further proceedings consistent with this opinion.

Whole court sitting.