## Marcum et. al. v. Commonwealth.

June 21, 1940.

R. Monroe Fields, Judge.

Astor Hogg, D. I. Day, J. L. Hays and Harry L. Moore for appellants.

Hubert Meredith, Attorney General, and Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Oscar Marcum and Bill Sergent appeal from a judgment of conviction and sentence of 15 years' imprisonment for killing Ed Brown.

Marcum was a constable of Letcher County and he and his co-defendant were cruising about or patrolling the roads on Sunday afternoon, November 13, 1938. Brown was riding in an automobile with John Testerman and wife. They had run out of gas at the junction of the Lewis Creek road with the highway along Cumberland River. According to the Commonwealth's proof, while Brown, unarmed, was walking down the road, the appellants' car came along, they got out of

their car, and with pistols in their hands walked up to him and Sergent hit him over the head with his pistol and Marcum shot him three times without provocation. According to the defendants' proof, Brown came to their car, told Marcum that he had nothing against him and asked him to walk down the road. While they were so doing, Brown suddenly whirled around and fired at Marcum and then Marcum killed him in self-defense, Sergent having come to his assistance.

Will Jenkins testified that he was standing on his porch about 150 feet away and saw the shooting. He bore strong testimony against the defendants. F. G. Fields, a justice of the peace, with whom Marcum as constable was associated, testified that four or five days, or perhaps a week, after the homicide someone pointed out to him where the killing occurred and he saw nearby a little blood on a rock about the size of his hand. Not long before the trial, 'Squire Fields and another went there and made some inspections as to the visibility of the place from Jenkins' porch. They testified that Jenkins could not have seen the killing. The court withdrew this testimony from the consideration of the jury, and that ruling is assigned as a prejudicial error. The exact location of the killing was not clearly established, the witnesses differing in some details. It did not, at the time, appear material. The presence of a little blood on a small rock found by 'Squire Fields several days later, is far from proving that that was the spot. Therefore, the court did not commit error in withdrawing the testimony of the two witnesses from the jury as to the inability of Jenkins to have seen what he testified to.

While the letter of the testimony does tend to prove that the homicide was either murder or excusable, yet the evidence that Brown had made threats against Marcum because of his arrest the previous July, together with the probability that something was said or done by one or more of the parties as they walked down the road, which was not heard or seen by the witnesses, other than the defendants and which they may have concealed, authorized the giving of the instructions on voluntary manslaughter. The inexplicable circumstances sustain the thought that the whole story was not revealed. There was room for the jury to believe that

the killing was the result of a sudden affray or sudden heat and passion. Therefore, tne giving of the manslaughter instruction was authorized.

A new trial was sought upon the ground that a juror, W. M. Holbrook, was disqualified because he had discussed the case and expressed the opinion that the defendants were guilty sometime before he was summoned for service on the jury. Several affidavits were filed in support of the ground for a new trial and the court directed that oral testimony be submitted. A number of witnesses were examined. Holbrook had been employed on a WPA project in or near Whitesburg. While the men were eating lunch, perhaps on several days, they discussed this homicide. Some of them say that they conducted something in the nature of a "moot court" to try it and perhaps other cases of local interest. Seven or eight of these men testified clearly that on one or more occasions Holbrook expressed the opinion that Marcum and Sergent were guilty. It is also shown that he had said upon several occasions, or at least in the hearing of several witnesses, that they ought to be given fifteen years or life imprisonment in the penitentiary. He had also expressed the view that this was the coldest blooded murder ever committed and "we don't need a murderer like that in this county." Cross-examination did not weaken the testimony of these men, and it seems natural and truthful. Holbrook denied making such statements. He admitted that the workmen talked about the case "back and forth among themselves," but denied there was any mock trial or moot court. Some of his answers rather import a weakness in his denials. The court, under the authority of Wolf v. Commonwealth, 214 Ky. 544, 283 S. W. 385, admitted testimony of Holbrook and a number of the jurors in the case showing that upon submission Holbrook suggested two years as the penalty and that throughout the discussions by the jurors he refused to agree to a higher penalty. After a time, when the jury had reported a disagreement and had been returned to consider the case, Holbrook and other proposed ten years, and finally the jury compromised on a fifteen-year sentence. It is indicated that the trial court thought this reflected the absence of bias on the part of the jurors against the defendants and, therefore, that he had not given expression to the opinions and views as charged. It must be

594

remembered that the defendants sought and now seek a new trial because of their conviction of the crime. Their grievance is not as to the penalty but as to the primary fact of conviction. The materiality and importance of the misconduct of the juror lay in his having declared on voir dire that he had never formed or expressed an opinion as to the guilt of the accused, whereas it appears that he had expressed such an opinion. It is an exceptional case that this court does not rest its decision of a question of this kind on the judgment of the trial court. It is a matter peculiarly in his discretion, as has been written many times. However, we have here a number of witnesses testifying clearly as to a natural and reasonable circumstance on one side and the denial of the interested person, none too strong, on the other side; and, even though he manifested liberality in the fixing of a penalty, we are constrained to the view that it was error for the trial court not to grant defendants a new trial on this ground.

The judgment is reversed.

Judge Rees not sitting.