## Marcum et al. v. Commonwealth.

Jan. 30, 1942.

Rehearing Denied May 1, 1942.

Astor Hogg for appellants.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On the former appeal of this case we reversed for a new trial, because it was developed that one of the jurors on the first trial was disqualified. 283 Ky. 590, 142 S. W. (2d) 137. The first verdict visited a penalty of confinement of each appellant for a period of fifteen years, which upon retrial was reduced to five years; from a judgment in accordance appeal is prosecuted, it being contended that the court erred in the admission of incompetent and prejudicial evidence; refused to admit competent evidence offered by appellants, which as we read briefs, refers to the refusal of the trial judge to direct the jury to visit and view the place where the homicide was committed.

The facts are stated in a general way in our first opinion, and we shall not make restatement, except insofar as it may be pertinent to reflect, if it does reflect, on the question presented on appeal. There is no question but that appellants fired the shots on the afternoon of Sunday, November 13, 1938, which resulted in the death of Ed Brown; the plea being that the shots were fired in the defense of one or the other or both appellants.

In the former opinion we made slight reference to testimony of threats made against Marcum by Brown. On retrial, whether appearing on the first or not, it was shown that witnesses testified that there had been threatening language, or certain acts committed on the one side or the other, or on both (as far as Marcum was concerned), which tend to show previous ill-feeling between Marcum and Brown. The former opinion states briefly what occurred at the time of and just prior to the homicide, and we shall not elaborate, except to say that Brown was riding in a car with Testerman and the latter's wife at Testerman's invitation, before it stopped because of lack of gas at the junction of the main highway and the Lewis Creek road. Marcum, a constable, was patrolling the highway; Sergent, not an officer, was accompanying him, and their car was near the gas station when Testerman stopped, but started toward Whitesburg. As they passed the Testerman car Marcum looked up, and apparently saw Brown in the car. Appellants then drove up (or down) the road, as they say to the home of a relative, about 700 or more yards from the place where Tester-

man's car was parked. They returned in a short time; appellant estimating it about three or four minutes.

In the meantime Brown had gotten out of the Testerman car; walked up the highway a short distance, and had turned in the side road, when Marcum drove up and turned into the road. At this point the testimony becomes very conflicting. Marcum and Sergent say (and there is some corroborating testimony) that Brown flagged them down, and when the Marcum car stopped, Brown walked up and addressing Marcum, said he had nothing against him, and asked him to get out of the car as he wanted to talk to him; Marcum complied and the two walked down the Lewis Creek road for a short distance, when Brown suddenly turned with drawn pistol and fired at Marcum, missing him, Marcum saying he grasped Brown's pistol hand, causing the failure of aim. Marcum called for Sergent to come to his aid, and was still struggling with Brown. Marcum drew his pistol and fired, and when Sergent came up he struck Brown on the head with his pistol and fired at Brown, who apparently died instantly.

Mr. and Mrs. Testerman, who were near enough to see all or part of the occurrence, say that when appellants drove up near the point where Brown was, on the Lewis Creek road, they stopped; Marcum got out of his car and without any words passing, grabbed Brown by the arm, turned him around and began firing shots into his body. As soon as the firing began Sergent came up and struck Brown on the head with his pistol, and then fired at Brown. As counsel says in brief:

"According to the evidence introduced by defendants, a clear case of self-defense was presented. The evidence offered by the commonwealth would indicate otherwise."

This is a correct statement; the "otherwise" may be taken to mean that under the commonwealth's testimony appellants were guilty of willful murder.

The complaint as to admission of alleged incompetent and prejudicial evidence relates to statements of Testerman and his wife, over objection of counsel for accused. John Testerman said:

"When Marcum started in the direction of Whitesburg he kindly looked over to the car and went on.

Mr. Brown said just as quick as he passed, 'John I have got to leave you.' I said, 'sit still Mr. Brown, I will get some gas and we will go on as quick as I can.' He said 'No, there might be trouble.' He got out of the car and just crossed the road—he told me he would be walking down the highway, and I told him I would obtain gas and would pick him up as quick as I could.''

Mrs. Testerman made substantially the same statement, except that she said that Brown said, when Testerman told him to stay in the car, ''No, if I stay here there will be trouble,'' and that the husband walked down the highway with Brown ''a little ways,'' and told him he would get gas and pick him up. Evidently from this part of the evidence it may be assumed, for what reason we do not know, that Brown thought Marcum and Sergent might come back to the point where Testerman's car was parked, which fact developed.

Counsel strenuously argues that testimony as to what Brown said when leaving, or after leaving the car, was totally incompetent and prejudicial to his rights, because these statements were hearsay; not made in the presence of the accused, and if made at all were made ''two or three minutes before the shooting took place, and therefore not to be treated as res gestae.''

It is agreed, as argued by counsel, that the statements were not dying declarations, but says counsel, since the party making the statement is dead the evidence must be treated, since coming from a third person, as hearsay, and since made by the deceased before the shooting, was not admissible as part of res gestae. Admitting for the purpose of argument that there is some force in counsel's contention as to incompetency, the sole question here presented is whether or not it was such as to prejudice the substantial rights of the accused. We have consistently held that where evidence is admitted against accused, over objection, in order to justify reversal it must appear to the court that such evidence must be both incompetent and prejudicial. Eaton v. Com., 230 Ky. 250, 19 S. W. (2d) 218. Therefore the sole question is as to whether or not it was such as might have unduly influenced the jury to the prejudice of the accused, and this presents a question somewhat psychological in nature. Under all the proof the jury might have been impressed with either of two different notions.

The next contention is that the court, in prejudice to accused, and over his objection, permitted the undertaker who removed Brown's clothing shortly after the body was brought to his establishment, to pass articles to the jury, and the jury allowed to inspect them. The undertaker was handed a coat and identified it as the coat he had removed from Brown's body on the day of his death. Likewise a union suit. He identified both, but when asked whether or not the garments were in the same condition as when originally introduced, he answered, ''apparently.'' He did not identify a belt and a shirt. Later on cross-examination the undertaker said that he had no doubt but that the articles were the same, and in the same condition, except that there had been, due to natural process, a drying of blood spots.

It is argued that the court erred in permitting the exhibition of the ''gory clothing,'' which may have inflamed the minds of the jury, and worked to the prejudice of accused. We think there was sufficient identification of the garments to allow them to be exhibited. The extent of examination by the jury, if any such, is not shown. As we read the meager evidence on the point, it appears that the purpose on the part of the commonwealth was to show points of entry of the bullets which caused Brown's death, illustrating the positions of the parties at the time. There is no claim that the garments exhibited were not the ones removed from Brown's body, or that with the exception of action by natural process the condition was not the same. We do not think the court committed error in allowing their display. See Gross v. Com., 255 Ky. 88, 72 S. W. (2d) 1017; Cox v. Com., 251 Ky. 128, 64 S. W. (2d) 481.

It is finally contended that the court erred in declining to sustain motion of accused to direct the jury to visit and view the scene of the homicide. Counsel frankly admits that the granting or refusing such a request is a matter which directs itself to the discretion of the trial judge, and likewise that there was a sharp conflict in the evidence as to whether or not certain witnesses, who had observed the shooting, from a nearby home could have seen the spot in the road where the encounter took place.

It occurs to us, after reading the testimony of these witnesses, had the jury visited the scene there would have still existed the conflict. There was introduced on the trial a blueprint made by a surveyor, at the instance

of accused, who with others testified at length on the controversial point, that is the place where the difficulty commenced and ended. The map was admitted over objection, and it was stated that one of the appellants, in company with the sheriff, directed the location of the various points in question. As the court pointed out in denying the request, a visit by the jury could and would not determine precisely where these points were, and that the question as to whether one witness or the other could have seen or were in position to observe the parties, would after all depend on a definite location of the disputed points.

This homicide occurred in November of 1938. This last trial was had in January 1941. It is not shown that the roads, or the points in dispute, or the surroundings were in the same condition as they were three years previously. But be this as it may, after a review of the evidence on these disputed points, we are clearly of the opinion that the trial court did not abuse discretion in failing to send the jury to the scene of action, and in this respect the rights of the parties were not prejudiced.

On the whole case we conclude that the accused received a fair trial; we are unable to say that their rights were prejudiced because of any of the alleged errors set out or otherwise. The light sentence visited upon appellants would indicate lack of bias or prejudice. Appellants admitted the shooting of Brown; they say they acted in self-defense. In many cases where such a situation has arisen we have held that it was incumbent on accused to convince the jury that the homicide was committed in self-defense.

Judgment affirmed.