## Higginbotham v. Commonwealth.

Oct. 6, 1942.

464

Lilburn Phelps and Terill A. Wilson for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant has appealed from a judgment of the Russell Circuit Court sentencing him to ten years in the penitentiary upon a jury verdict finding him guilty of the crime of manslaughter under an indictment charging him with the murder of Elzie York, whom he, appellant, shot and killed near the voting place on the day of the primary election in August, 1941. A reversal of the judgment is asked upon various grounds, namely, that the verdict is flagrantly against the evidence and against the law of self-defense; that appellant was prejudiced by the admission of incompetent evidence against him; and that the court should have granted a new trial upon the grounds of newly discovered evidence.

At the time the homicide occurred a large number of people were assembled about the voting place. More than thirty witnesses testified in the case, some of them being eyewitnesses to the occurrence and others testified to circumstances and matters connected with the homicide. It appears from the evidence of some of the witnesses that appellant was intoxicated, while other witnesses did not seem to know whether or not he was intoxicated. Appellant admitted, however, that he had taken two or three drinks during the middle of the forenoon and up to about 12 o'clock. It is also in evidence that appellant appeared to be in an angry or fighting mood on that day. A number of witnesses for the Commonwealth testified that before the homicide appellant said that he was going to ''get some son-of-a-bitch''; at different times he said that he was going to kill some

s—— of a b——, and that he was going to get him before he left. No witness stated, however, that appellant mentioned the name of Elzie York, the deceased, or any other person in connection with these blanket threats. There is also evidence to the effect that appellant frequently engaged in quarrels or controversies with various others during the day and appeared to be in a very belligerent state of mind.

Just previous to the homicide appellant and two or three others, including James York, brother of the deceased, were assembled near a well where they engaged in a quarrel or controversy of some nature and the deceased appeared on the scene, perhaps about the time the controversy had ended. One witness testified that when appellant saw deceased approaching he said: "Here comes another brother (meaning a brother of James York). I will kill him in a minute." According to the evidence of a number of witnesses, when the deceased approached appellant assaulted him with a pistol and fired one shot at him and the deceased then struck appellant with a singletree. Appellant and a number of witnesses who testified for him stated that the deceased assaulted appellant with the singletree before appellant fired the first shot, which missed deceased, and deceased continued to strike appellant or strike at him with the singletree and appellant fired one or two more shots, one of which took effect in the body of deceased resulting in his death.

Appellant pleaded self-defense, claiming that the deceased assaulted him with the singletree, a deadly weapon, and that he shot the deceased to protect himself from death or great bodily harm at the hands of the deceased. If the jury had seen cause to believe the evidence of appellant and his witnesses appellant would have been entitled to a verdict of acquittal. Since, however, the evidence of four or five witnesses for the Commonwealth is in direct contradiction to that of appellant and his witnesses, tending to show that appellant was the aggressor, the jury had the right to believe the latter witnesses and disbelieve appellant and his witnesses.

In brief of appellant it is conceded that the evidence is contradictory, but it is insisted that some of the witnesses for the Commonwealth made contradictory statements; that is, they testified to one state of facts on di-

rect examination and to an opposite state of facts on cross-examination. It is further claimed that the evidence of several of the witnesses for the Commonwealth was unreasonable, incredible and confusing, and for that reason their evidence should not be given much weight or consideration, and is insufficient to warrant a conviction. Since the jury is the judge of the credibility of witnesses and the weight to be given their evidence, these matters were a province of the jury. We conclude that the evidence is sufficient to refute the claim of self-defense and is amply sufficient to sustain the verdict.

The alleged incompetent evidence complained of is that the Commonwealth introduced the mother of deceased and in the course of the examination she was asked about whether deceased was married or single and how many children he had. It is insisted for appellant that the mother of deceased was introduced as a witness and asked about the number of children that deceased left for the purpose of playing on the sympathies of the jury and prejudicing their minds against appellant. Conceding that it was unnecessary to ask about the number of children the deceased left, yet we do not think it was prejudicial to the substantial rights of appellant. Since appellant admitted the killing of deceased and pleaded self-defense, it is reasonable to presume that the jury made their verdict upon the evidence and instructions of the court on the issue of self-defense without any consideration of the fact that a number of children were made orphans because of the death of deceased.

Other alleged incompetent evidence is that the Commonwealth introduced the undertaker as its last witness and had him to exhibit the bloody clothing of deceased showing the bullet hole in the clothing to determine the number of shots that struck the deceased. It is argued for appellant that the bloody clothing of the deceased was exhibited to the jury for the purpose of appealing to their feelings and prejudices. It is not uncommon for clothing of a deceased person to be exhibited to the jury in homicide cases or other cases when it is necessary to do so to prove any relative and competent fact. Marcum v. Commonwealth, 290 Ky. 337, 160 S. W. (2d) 660. The court admonished the jury:

"Those clothing are not competent except if you could find more than one bullet hole in them. They

are introduced for that purpose and no other.''
We find no merit in the contention of appellant that the exhibition of the deceased's clothing was prejudicial to his substantial rights.

The final contention is that appellant should have been granted a new trial on the grounds of newly discovered evidence. It appears that one of the witnesses who was summoned for the Commonwealth and was present in the courtroom during the trial was not introduced by the Commonwealth. After the trial counsel for appellant interviewed the witness and learned that the witness would have testified to facts favorable to appellant, had he testified in the case. We find no merit in this point for reasons (a) the witness was there in court and his presence known to appellant and his counsel and they had every opportunity to consult the witness for the purpose of learning the facts to which the witness would testify, but they failed to do so. A lack of diligence is obvious. And (b) the facts to which appellant claims he could have proven by the witness were only cumulative to the same facts testified to by a number of witnesses who testified for appellant. For these reasons the trial court did not err in refusing to grant a new trial on this ground.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.