**Thomas Vincent GREENWELL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Sept. 26, 1958.

Rehearing Denied Dec. 12, 1958.

Wm. L. Sullivan, Dorsey & Sullivan, Henderson, for appellant.

Jo M. Ferguson, Atty. Gen., David B. Sebree, Asst. Atty. Gen., John S. Palmore, Commonwealth's Atty., Henderson, for appellee.

STANLEY, Commissioner.

Appellant, Thomas Vincent Greenwell, was jointly indicted with Joseph Eggler for the crime of obtaining by false token the signature of another to a writing, the false making whereof would be a forgery, an offense denounced by KRS 434.050. On his separate trial Greenwell was found guilty and sentenced to five years' imprisonment.

The court overruled the defendant's motion to set aside the indictment because during the inquiry a machine or device was

operated in the grand jury room which recorded the testimony of the witnesses therein upon tape or discs. The recordings, which were capable of reproducing the testimony audibly, were in the possession of the Commonwealth's attorney. None had been "played back" before any witness. No order of court permitted the use of the device and no stenographer was present during the examination of the witnesses.

The appellant maintains that the recording machine could have been used only under the terms of KRS 28.435(1). By this statute any circuit judge may "if he deems it necessary to aid the court and the stenographic reporter, require" that such a device be used "in any proceeding in a circuit court." But the use is conditioned upon an official stenographer being "present to take full stenographic notes of the proceeding," except that "with the approval of the parties, acting through their respective attorneys," the presence of a stenographic reporter may be dispensed with.

A grand jury is a part of the court and under judicial control, so there can be no doubt that a session of the grand jury is a "proceeding in a circuit court." The question is whether this statute applies to reporting evidence before a grand jury. The statute says the use of a recording device is "to aid the court and the stenographic reporter" and permits the services of a stenographer to be dispensed with by consent "of the parties, acting through their respective attorneys." The latter provision negatives the idea that the statute was intended to apply in a proceeding before a grand jury. Moreover, we have another statute relating specifically to reporting evidence heard by a grand jury. Section 110 of the Criminal Code permits as an exception to the law that no person other than the Commonwealth's and the county attorneys and the witness under examination shall be present while the grand jury is examining a charge, that an official stenographer, upon order of the Commonwealth's attorney, be present and makes notes of the testimony and transcribe the same. Such a reporter is an officer of the court and is sworn to secrecy. If the legislature had intended to prohibit or qualify the use of a recording device in a grand jury proceeding, it would likely have amended, directly or indirectly, § 110 of the Criminal Code. That it did not do.

We conclude, therefore, that the terms of KRS 28.435(1) do not apply.

We come to the question whether the use of the recording device violated the secrecy of the grand jury.

From earliest times it has been the policy of the law in furtherance of justice to shield the proceedings of grand juries from public scrutiny. Secrecy is for the protection of the witnesses and the good names of innocent persons investigated but not indicted and is to inspire the grand jurors with a confidence of secrecy in the discharge of their duties. It is not for the benefit or protection of any right of any person indicted unless such right is given by a statute. 38 C.J.S. Grand Juries § 43 and notes; 24 Am.Jur., Grand Jury, § 47. Cf. Pritchett v. Frisby, 112 Ky. 629, 66 S.W. 503; Alford v. Commonwealth, 240 Ky. 513, 42 S.W.2d 711. Our statutes prescribe that only the officers as above stated may be present during the examination of a witness, and all of these nonmembers are excluded while the grand jury is deliberating or voting. If an outsider was present when the jury acted on an indictment, it is a ground for setting aside the indictment. §§ 110, 158(2), Criminal Code. And secrecy is enjoined upon the jurors except in a prosecution for false swearing or to contradict a witness on the trial of the defendant. § 113, Criminal Code. The use of a recording device, therefore, does not come under the ban of any statute. The same end of recording the testimony could be accomplished if either the Commonwealth's attorney or the county attorney should be skilled in shorthand and take notes with a pen or pencil for their own use. In United States v. American Tobacco Co., 177 F. 774, 775, the

United States District Court for the Western District of Kentucky held that an indictment was not to be quashed because an assistant district attorney had made stenographic notes of the testimony and afterward read the same to the district attorney and a special agent for the government who was in consultation with him.

■ The use of a recording device in a grand jury inquiry is an unorthodox practice and is not to be commended. There is risk of unauthorized disclosure and embarrassment. We conceive use of the record which could be unfair to a defendant, but in the present case such a use was not made and the rights of the defendant were not prejudiced.

■ The appellant assigns six grounds, any one of which he maintains required the demurrer to the indictment be sustained. Two of them are grounds of demurrer to an indictment for forgery, namely, failure to set forth the writing and to state that a bank upon which a check was drawn was incorporated. The indictment is for a different class of fraud, namely, obtaining money by false pretenses, rather than forgery. KRS 434.050. The specific charge is substantially in the language of the statute, namely, "obtaining by a false token the signature of another to a writing, the false making whereof would be forgery." The indictment describes the manner in which that was accomplished. It is that this defendant and Joseph Nicholas Eggler, with the intent to defraud the Ohio Valley Soybean Cooperative, a corporation, obtained the signature of the corporation upon a bank check for $610.71, drawn upon a named bank in favor of Gordon Morgan, as payee, "the false making of which check would be forgery, by presenting to. said corporation a false and ·spurious weight ticket purporting to evince the receipt by said corporation from the said Gordon Morgan of 18,140 pounds of soybeans, whereas in truth and fact there had been no such receipt of said soybeans and said weight ticket was a false token, which facts

were well known to said defendants; and relying upon said false and spurious weight ticket and believing same to be true and correct, said corporation was induced to and did make and sign said bank check and deliver same * * *."

■ KRS 434.050 is comprehensive. Its purpose is to provide punishment of an offender who, by false representation and ingenious devices, intentionally sought to procure and did procure money or personal property from other persons. One of the particular means of doing so is by obtaining a signature upon a writing. Roberson, Kentucky Criminal Law, §§ 937, 994. We regard the word "forgery" as being used in the statute in the sense that the writing would not have been signed but for the fraud, rather than in the complete technical sense of the word. Therefore, it is not necessary that an indictment under the statute shall describe particulars which are essential to a good indictment for forgery; thus, the writing need not be set forth at length, it being sufficient that its nature and the substance of its contents be described. Roberson, § 997, p. 1226, § 1003, p. 1233; 35 C.J.S. False Pretenses § 42(2) ; Commonwealth v. Scroggin, 60 S.W. 528, 22 Ky. Law Rep. 1338; Commonwealth v. Lacey, 158 Ky. 584, 165 S.W. 971.

It is contended the indictment is fatally defective because it does not specifically charge that the accused knew the "weight ticket," which is charged to have been presented as an inducement for the signature upon the check, was in fact spurious. The indictment, we think, does contain a definite charge of knowledge of the spurious character of the instrument presented. It charges "in truth and in fact there had been no such receipt of said soybeans and said weight ticket was a false token, which facts were well known to the said defendant." The "facts" were not the allegations of presentation but clearly refer to the statements immediately preceding the clause, namely, that there was in fact no such receipt and in fact that the weight ticket was "a false token."

The other grounds of the demurrer may be summarily disposed of by saying that upon examination we find them to be without merit.

The indictment meets the requisites laid down by the Criminal Code. It states the acts constituting the offense "in such manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case." § 122, subd. 2. It is "direct and certain" with respect to the facts as required by § 124. Therefore, the court properly overruled the demurrer to the indictment.

■ The argument that the defendant was entitled to a directed verdict of acquittal requires a statement of the evidence. We have a big record of oral testimony and about one hundred exhibits, for the trial took a wide range, as is often the case where the prosecution rests on circumstantial evidence of covert and collusive fraud. We confine our statement to the substance of the material proof from which the jury could have reasonably concluded the defendant was guilty.

The Ohio Valley Soybean Cooperative, as its name suggests, was engaged in the business of purchasing, storing and selling soybeans in Henderson County. Its volume of business was approximately 800,000 bushels a year. Samples of grain brought to the plant by or for a grower by truck were taken and the load weighed. Copies of a ticket showing the weight were signed by the weigher and the trucker. One copy would be passed on to the check writing personnel and to authorized officers for their signatures. The checks would customarily be mailed to the payee whose grain had been delivered. The defendant's codefendant, Eggler, was a Cooperative weighman. On the occasion of the particular transaction and at other times he received alone soybeans at night or after the regular day shift had gone off duty. On that occasion a weight ticket was drawn up by Eggler showing the receipt of 18,140 pounds of soybeans, delivered by or for Gordon Morgan of Morganfield during a brief period one night. Upon the basis of that receipt and weight ticket, Cooperative's officer signed a check for $610.71, payable to Morgan, and it was mailed to him.

Morgan was a "part time" farmer and a "part time" city fireman in Morganfield. He had been employed from time to time by the defendant, Greenwell, who farmed a considerable acreage as owner or lessee. Morgan testified that he had not delivered any soybeans to Cooperative on the occasion involved and had not signed the weight tickets bearing his name as the trucker. On this occasion and upon other occasions Greenwell had told Morgan he had sold or would sell soybeans under his name. At the time, he said "he needed operating expenses" and indicated that the sale in his name was being done to avoid his creditors. Morgan had cashed the check for $610.71 and given the money to Greenwell.

The Commonwealth showed by other evidence that Morgan had not in fact been at the Cooperative plant that night but had been on duty at the fire department in Morganfield. It was also shown that within the time indicated on the weight receipts, it could hardly have been possible that four loads of grain could have been delivered on the night on which the particular load was supposed to have been delivered.

Morgan testified that he had innocently participated in a number of such transactions during a period of five years. He identified twenty-five weight receipts bearing his name as, in fact, not having been signed by him. However, there were some genuine transactions in which he had delivered his own crops.

The evidence, as we have said, was broad in scope. It showed a consistent pattern of similar fraudulent operations by the defendant, Greenwell, and the weighman,

Eggler, not only by the use of Morgan's name, but the names of three other accommodating persons. Eggler did not testify on this trial.

█ In order to accomplish the false weight, it was necessary to tamper with the scales, which would automatically stamp the weight on the ticket sent to the office for processing. It appeared necessary that the Commonwealth show how this could be done when, in fact, there was nothing being weighed. A qualified witness who had conducted an experiment with the scales (shown to have been in the same condition) testified that placing a ten pound weight on the balance bar would accomplish the same result as a load on the platform. The witness used an enlarged photograph, shown to have been accurate, to illustrate and explain his experiments to the jury. The scales were fixtures in the building and in any event were too large to have been set up in the court room.

The appellant submits this evidence was incompetent because the experiment and picture had been made when he was not present, and the evidence may have induced the jury to believe that his codefendant, Eggler, had used the ten pound weight to manipulate the scales when there was no evidence that he had in fact done so or even that he had access to it.

█ The witness did not claim that the weight had in fact been used to effectuate the fraud. His whole testimony made it clear that he was merely relating the manner and result of experiments made with a machine charged to have been used in committing the offense. The admission of evidence resulting from experiments and demonstrations out of court and not in the presence of the jury is within the discretion of the trial judge in the light of all the surrounding facts and circumstances. While such evidence should be received with caution (Cf. Marcum v. Commonwealth, 283 Ky. 590, 142 S.W.2d 137),

its admission is proper when it is apparent to the court that the evidence will enlighten and aid the jury in its deliberations. Mansfield v. Commonwealth, 163 Ky. 488, 174 S.W. 16; 22 C.J.S. Criminal Law § 645; 23 C.J.S. Criminal Law § 967. The fact that experiments otherwise admissible were made in the absence of the defendant merely goes to the weight of the evidence and not to its admissibility.

We cannot agree with the appellant that there was no evidence of a conspiracy between him and Eggler independent of testimony of Eggler's acts; hence, evidence of his acts was incompetent, and there was no corroborative evidence upon which the jury could have found such a conspiracy had existed.

Greenwell's evidence tends to establish his innocence. He claimed to have actually delivered to Cooperative sixty loads of soybeans, aggregating 16,377 bushels, during the 1956 season. Evidence of the Commonwealth very satisfactorily showed that Greenwell could not have raised that much grain on the lands he cultivated.

All of the evidence proved clearly that the defendant had participated in committing actual fraud upon Cooperative by means of a false "token" and that Cooperative had actually suffered loss in the particular transaction charged in a good indictment and submitted to the jury under proper instructions.

We find there was no prejudicial error.

The judgment is affirmed.

MONTGOMERY, J., dissenting.

MONTGOMERY, Judge (dissenting).

I respectfully dissent because Criminal Code, Section 110 provides in detail the method by which the testimony given before the grand jury shall be preserved. This opinion, in effect, nullifies the provisions of this section and opens the way for

the use of devices which are not authorized by the Code and which were not contemplated at the time of its adoption. The next innovation in violation of Criminal Code, Section 110 will be a motion picture camera with sound attachment.

My objection is directed to the lack of authority for such devices. Until the General Assembly sees fit to authorize such devices, I feel that they should be prohibited. In this connection, the General Assembly has enacted KRS 28.435(1), which, obviously, refers to a trial and not to a grand jury proceeding and, therefore, has no place in this case except that it indicates that the General Assembly was not ready to authorize the use of such a device before a grand jury.

The use of the recording device is not surrounded by the safeguards of the Criminal Code. The stenographer is required to qualify by taking an oath for the faithful discharge of the duties as such and is sworn "not to disclose, or make known, directly or indirectly, to any person or persons, anything that occurred, was stated or given in the evidence, or transpired, bearing upon any case or investigation before the grand jury". In addition, a correct and full transcript of the testimony taken must be made. There are no such safeguards surrounding the use of a recording device which would prevent a full disclosure to any stranger who might chance upon it or a part of the testimony from being deleted.

There is the further objection that the use of such recording device enables the Commonwealth's attorney to deny any person indicted by a grand jury the right to procure a copy of the stenographic record, or any part thereof.

The provisions of the Criminal Code with reference to the grand jury, its powers and duties, have been carefully drawn to insure the secrecy of its proceedings and the protection of its members, the accused,

or any innocent person investigated by it. Criminal Code, Section 110 should not be cast aside and the use of an unauthorized device in violation thereof should not be permitted.