## Reagan v. Commonwealth.

(Decided December 7, 1926.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. **Burglary—Evidence of Preparation, Possession of Burglar's Tools, and Opened Window, Held Not to Warrant Directed Acquittal.—** Defendant in prosecution for attempted storehouse breaking, having been proved to have armed self with tools and appliances of burglar, entered roof over jeweler's storehouse, and opened window, before discovery by watchman, held not entitled to directed acquittal; evidence constituting requirements of crime of attempted storehouse breaking.

2. **Burglary—Defendant's Sentence in Prosecution for Attempted Storehouse Breaking Held Merited, Evidence Indicating he was Outlaw.—** Evidence indicating that defendant to prosecution for

attempted storehouse breaking was outlaw, guilty of charge, sentence was fully merited.

DAVID SESSMER and CLEM W. HUGGGINS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

Appellant has been convicted in the criminal branch of the Jefferson circuit court of the common-law offense of attempted storehouse breaking, and sentenced to confinement in the county jail for a period of four years. This may be called a companion case to that in which under the same style an opinion has this day been rendered affirming judgment against appellant sentencing him to 10 years' confinement in the penitentiary for possessing burglar's tools. Substantially the same state of facts are found in the evidence herein as are detailed in the previous opinion, and it is referred to for the particulars.

Appellant insists that the trial court erred in not instructing the jury to return a verdict finding him not guilty, upon the theory that the testimony for the Commonwealth at most established nothing more than mere preparation to commit a crime, with no evidence of any act upon his part toward its consummation.

In Nider v. Commonwealth, 140 Ky. 684, 131 S. W. 1024, this court thus wrote the rule for determining when one may be found guilty of an attempt to commit an offense:

"The next question is, what constitutes an attempt to commit an offense? The authorities treating of this subject are in substantial agreement as to the essential things necessary to constitute an attempt although they differ in the form of expression. Thus, in Bishop's Criminal Law, vol. 1 sec. 728, an attempt is defined as follows:

"'An attempt is an intent to do a particular thing which the law, either common or statutory, has declared to be a crime, coupled with an act towards the doing, sufficient both in magnitude and in proximity to the act intended, to be taken cognizance

of by the law that does not concern itself with things trivial and small. Or, more briefly, an attempt is an intent to do a particular criminal thing, with an act toward it, falling short of the thing intended.'

"And Bouvier in his law dictionary gives this definition: 'An attempt to commit a crime is defined to be an endeavor to accomplish it carried beyond mere preparation, but falling short of the ultimate design.'

"And in 3 Am. & Eng. Ency. of Law, page 250, it is said: 'An attempt to commit a crime is an act done in part execution of a criminal design, amounting to more than mere preparation, but falling short of actual consummation, and possessing, except for failure to consummate, all the elements of the substantive crime.'

"In Wharton's Criminal Law, vol. 1, sec. 173, 12 Cyc., page 176, and Clark's Criminal Law, sec. 126, definitions similar to the ones given can be found."

The facts of this case bring it clearly within the rule, *supra*. In preparation for the commission of the crime, for attempting to commit which appellant has been indicted and convicted, the evidence herein clearly establishes that he armed himself with the tools, appliances and agencies commonly used for the purpose. He had in his possession a "jimmy," a hammer, a ratchet drill, a steel punch, some chisels, a flashlight, an extra flashlight battery, a coil of copper wire, absorbent cotton, a quantity of soap, a bottle of nitroglycerine, and a pistol. But the evidence does not establish that he stopped with that. Armed with those implements of his illegal profession he left the streets of the city and the places therein where men may be without suspicion that they are engaged in any other than legal enterprises, trespassed upon the property of others and gained access to the roof of the building from which through the windows entrance to the storehouse of the jewelry firm might be had. That alone perhaps would bring the case within the rule, *supra,* because, coupled with his preparation, that would seem to be an act toward the doing of a thing declared to be a crime which is sufficient both in magnitude and in proximity to the act intended to be taken cognizance of by the law. But that is not all. The evi-

dence herein establishes that all of the windows of the storehouse in question had been closed and fastened when the proprietor and his clerks left the previous evening. The night watchman in making his rounds earlier in the night had observed that all of them were closed. When making his round at 1:30 o'clock at night, when he caught appellant on the roof of the building, the night watchman discovered that one of the windows other than the one through which he had gone to the roof had been opened. The window so found open bore no evidence that force had been resorted to in opening it. It is immaterial, however, that appellant was able to open the window without leaving visible marks of violence upon it. The evidence establishes that he had prepared and equipped himself fully for storehouse breaking, burglary and safe-blowing. Toward the consummation of the former crime, under cover of darkness and at a time best calculated to shield him from detection, he had trespassed upon the property of another to reach the storehouse he is charged with having attempted to break, and opened one of the windows. Full consummation of the attempted crime appears to have been prevented only by the timely arrival of the night watchman. The evidence herein fully measures up to the rule above, and appellant's contention that he was entitled to a directed acquittal is wholly without merit.

Appellant testified for himself herein and professed to have been so drunk on the occasion in question that he did not know what happened. He testified that he arrived in Louisville the afternoon before he was arrested and fell in company with a member of the local union of carpenters, and that in the course of the evening they had several drinks together. Asked to explain how he happened to be on the roof he stated: "I haven't the slightest idea more than the party I was with asked me to step up on the roof with him; he had some stuff there he would like to get; I thought probably it was some moonshine whiskey; that was the impression I was under; I had no idea; I was a stranger in town; I didn't know the location of the buildings." His cross-examination tended strongly to establish, as did the tools, appliances and agencies found in his possession when he was arrested, as well as the place where he was arrested, that he is an outlaw, preying upon society and fully

merited the punishment received. Instructions given clearly and concisely submitted the issues and no substantial errors appear in the record.

The judgment, therefore, will be affirmed.

Judgment affirmed.