## Alford et al. v. Commonwealth.

(Decided October 16, 1931.)

**514**

SMITH & REYNOLDS for appellants.

J. W. CAMMACK, Attorney General, and BASIL P. COOPER for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellants, Tom Alford and C. H. Burch, were indicted by the grand jury of Fayette county for feloniously attempting to open a safe with explosives, a crime denounced by section 1159a of the Kentucky Statutes. Upon their trial they were convicted and each was sentenced to serve twenty years in the state penitentiary.

The following grounds are relied upon for a reversal of the judgment: (1) Failure of the trial court to instruct the jury on the law of entrapment; (2) failure of the

court to give definition of the crime of safe blowing; (3) refusal of the court to set aside the indictment which was voted by a grand jury before whom persons were present other than the members of the grand jury at the time the evidence against the accused was being heard; (4) failure of the commonwealth to prove that at the time of the alleged attempt to open the safe there was money or other things of value in the safe; (5) because the offense charged was not proven.

The crime of which appellants stand convicted was committed on Saturday night, March 21, 1931. Shortly before that date two stores in Lexington had been entered and the safes therein opened with explosives. Appellants were suspected by members of the Lexington police department of being implicated in those crimes. A few days before March 21, 1931, Ed Wiseman, a police officer, observed Russell Rose, an ex-convict, in conversation with appellants, who were in an automobile parked on South Broadway. After appellants drove away, Wiseman accosted Rose and asked him who were in the automobile and whether or not he knew anything concerning the business in which they were engaged. Rose admitted that he and appellants and Virgil Alford, a brother of Tom Alford, had formed a plan to rob the J. D. Purcell department store, a four-story building located on the south side of Main street, in Lexington. Rose was taken before Ernest Thompson, chief of police, who instructed him to continue his negotiations with the two Alfords and Burch and to keep the police informed of their plans. Rose agreed to carry out these instructions.

Rose informed his companions that he was on friendly terms with the night watchman in the J. D. Purcell Company store, and it was planned that he should go to the store on the night of March 21, overpower the night watchman, and allow the two Alfords and Burch to enter the store. The Alfords and Burch were to be at the basement door at the rear of the store at 11 o'clock. In the meantime Thompson, who had information of this plan from Rose, accompanied by four policemen, had gone to the third floor of the store where the safe was located. The third floor was divided by a partition which was nine feet high but did not extend to the ceiling. The offices of the company were located in that portion of the third story of the building fronting on Main street and north of this partition. The safe was located in the northeast portion of the room which had been partitioned

off for the offices. One of the policemen was armed with a machine gun and the others with shot guns. They were concealed in that portion of the room on the third floor south of the partition.

The two Alfords and Burch appeared at the basement door at the rear of the store at the time appointed and found W. S. Crume, the night watchman, lying on the floor and Rose standing near him with a pistol in his hand. One of the Alfords asked Crume where the money of the company was kept, and Crume said, "In the safe on the third floor." Appellants and Virgil Alford forced Crume to accompany them to the third floor of the building. Rose also accompanied them. When they arrived on the third floor, Crume's hands and feet were bound with wire and rope and he was placed on a divan near a door leading through the partition into the room where the safe was located. Burch examined the door and then climbed up on the partition. The rear part of the room was dark, but the street lights furnished some light in the front part. After Burch had looked into the room where the safe was located, he got down and walked alongside the partition. About this time the lights were switched on and one of the policemen commanded the accused and their companions to surrender. Almost simultaneously with this command, several shots were fired. The policemen, Rose, and Crume testified that the first shot was fired either by one of the appellants or by Virgil Alford. The appellants testified that the first shot was fired by one of the policemen. After the firing ceased, it was found that Virgil Alford was dead and Rose and Crume, the night watchman, had been wounded. On the floor, near the place where appellants and Virgil Alford were standing when the shooting began, were found three pistols and a kit of burglar's tools, including four pinch bars, a hammer, and a screwdriver. When Burch was searched, a bottle of nitroglycerin, a fuse, soap, and some caps were found on his person.

Appellants admit that the three pistols found on the floor belonged to them and Virgil Alford, but they claim that none of them had been fired. One of the policemen testified, however, that he removed eighteen shells from these pistols, three of which had been fired.

It is first insisted that the court erred in failing to instruct the jury on the law of entrapment, on the theory that Thompson entered into a scheme with Rose for the purpose of inducing the appellants to commit the offense

charged in the indictment. Appellants testified that Rose first suggested to them the robbery of the Purcell Company's store, but Rose denied this and said that Tom Alford first suggested the robbery. Be that as it may, the evidence shows that the plan to commit the robbery had been formed by appellants and Rose before any member of the police force had any information concerning it. The criminal design originated in the minds of appellants and Rose. The arresting officers, after learning of the proposed robbery, merely allowed appellants and their companions to proceed in their plans and preparations and arrested them while actually engaged in the commission of the crime. It seems to be the general rule that where the criminal intent originates in the mind of the entrapping person and the accused is lured into the commission of the offense charged in order to prosecute him therefor, no conviction can be had; but even in the case of those crimes of which an essential element is that some act necessary in its commission must be done without the consent of the person affected, mere passive acquiescence or inducement on the part of the person affected is no defense. A collection of the cases on entrapment will be found in the notes to Butts v. United States, 18 A. L. R. 143, and Robinson v. United States, 66 A. L. R. 468. In the instant case the uncontradicted evidence shows that the criminal intent originated in the minds of appellants and that they acted of their own volition. The court therefore did not err in failing to give an instruction on entrapment.

There is no merit in appellants' contention that the court erred in failing to give an instruction defining the term "safe blowing". The court instructed the jury that if they believed from the evidence beyond a reasonable doubt that the appellants "unlawfully and feloniously did by means of explosives attempt to unlawfully open a safe belonging to and being the property of the J. D. Purcell Company, a Kentucky corporation, in which safe was kept monies, notes, and other things of value, then the jury shall find the defendants guilty as charged in the indictment." In this instruction the jury was informed that the crime of which appellants was charged was the unlawful attempt to open a safe by means of explosives. No technical words requiring definition were used in this instruction, and counsel for appellants have not pointed out the manner in which this instruction could be made clearer or more easily understood.

The third ground relied upon by appellants for reversal is based on the fact that the official stenographer was in the grand jury room during the examination of witnesses, and it is insisted that this was in violation of section 248 of the Constitution and rendered the indictment void. Section 248 of the Constitution merely provides that a grand jury shall consist of twelve persons, and it has been held that an indictment found by a grand jury consisting of more than twelve persons is void. Downs v. Commonwealth, 92 Ky. 605, 18 S. W. 526, 13 Ky. Law Rep. 820. But that is not this case. It is not claimed that more than twelve persons served on the grand jury that returned the indictment. Section 110 of the Criminal Code of Practice provides that no person except the commonwealth's and county attorneys and the witness under examination shall be present while the grand jury is examining a charge, except that the commonwealth's attorney may appoint a stenographer who shall, on his order, attend any session of the grand jury and be present during the examination of any witness. This section does not violate section 248 of the Constitution, and we so held by implication in Wireman v. Commonwealth, 211 Ky. 495, 277 S. W. 822.

It is next insisted that the commonwealth failed to prove that at the time of the alleged attempt to open the safe there was property or other things of value therein. Lynn Grogan, assistant manager of the J. D. Purcell Company, testified that he placed approximately $3,000 of money in the safe on the afternoon of March 21. Miss Frances Hoffman, cashier of the company, testified that she opened the safe on Monday morning following the attempted robbery and found two or three thousand dollars in it. William M. Walker, manager of the company, testified that he locked the safe at 6 o'clock on the night of March 21, 1931, and that the day's collections were then in the safe. He was present on Monday morning when the safe was opened and found the contents of the safe exactly as he left them on Saturday night. While it is shown that two other men, who were connected with the store, had the combination to the safe, the evidence was amply sufficient to show that property of value was in the safe on Saturday night when appellants were in the building.

It is finally insisted that the commonwealth failed to prove the charge of attempting to open the safe. This contention is based on the theory that appellants

had committed no overt act when they were apprehended, and while they had intended to open the safe with explosives, the mere intention to commit the act did not amount to an attempt. In Nider v. Commonwealth, 140 Ky. 684, 131 S. W. 1024, Ann. Cas. 1913E, 1246, the following definition of attempt to commit a crime, found in Bishop's Criminal Law, vol. 1, sec. 728, was quoted with approval: "An attempt is an intent to do a particular thing which the law, either common or statutory, has declared to be a crime, coupled with an act towards the doing, sufficient both in magnitude and in proximity to the act intended to be taken cognizance of by the law that does not concern itself with things trivial and small. Or, more briefly, an attempt is an intent to do a particular criminal thing, with an act toward it falling short of the thing intended." Here it is shown that the appellants intended to open a safe located on the third floor of the Purcell Company's building in which was money and other property of value; they armed themselves with pistols, nitroglycerin, and other things needed in the commission of the intended crime, entered the building, forced the night watchman to accompany them to the third floor, after he had disclosed to them the location of the safe, bound his hands and feet, and apparently were about to enter the room where the safe was located when they were arrested. These acts were done in part execution of the criminal design to open the safe and amounted to more than mere preparation. It clearly amounted to an attempt within the above definition. Reagan v. Commonwealth, 217 Ky. 83, 288 S. W. 1026.

We are of the opinion that there was sufficient evidence to warrant a conviction for an attempt to open the safe of another with explosives.

Wherefore the judgment is affirmed.