THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ ISMAEL ZAYAS, Defendant and Appellant.

No. 14906. Argued January 8, 1951.—Decided January 18, 1951.

18

*Inés Acevedo Campos* and *Rafael Muñoz Ramos* for appellant.
*Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

José Ismael Zayas was accused and convicted of a violation of § 84 of the Penal Code of Puerto Rico and sentenced to serve from one-month to one-year imprisonment in the penitentiary, at hard labor, and to pay a fine of $100, plus costs. Feeling aggrieved he appealed.

At the beginning of the trial in the lower court Zayas set up a demurrer to the information on the ground that the latter does not state facts constituting a violation of the aforesaid Section. His demurrer was overruled and the order to that effect is the ground of the first error assigned. In his discussion of this error, the appellant claims that the Spanish text of § 84 of the Penal Code is an erroneous translation of the English text, which is the prevailing text, inasmuch as the attempt contemplated by said Section does not mean the mere intention to prevent, but rather an overt act and that the mere intention would never amount to an attempt if it is not coupled with the performance of any act towards consummating that intention.

The information filed in this case essentially recites as follows: ". . . the aforesaid defendants . . . [1] wilfully and

---

[1] The appellant was accused jointly with his father José Leonardo Zayas. After hearing the case the jury discharged the latter.

unlawfully and by the use of violence . . . attempted to prevent insular policeman Domingo Torres Mattei, . . . who was an executive officer . . . the defendant being aware of this fact, from performing the duties imposed upon him by law when said insular policeman had lawfully arrested Braulio Rivera Rivera in order to take him to the Municipal Court of Coamo by virtue of said arrest." The English text of § 84 of the Penal Code of Puerto Rico is couched in the following terms:

"Every person .who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer in the performance of his duty, is punishable by fine not exceeding five thousand dollars, and imprisonment in the penitentiary not exceeding five years."

The Spanish text of said Section provides:

*Toda persona que intentare por medio de amenaza o violencia, impedir a un funcionario ejecutivo que cumpla cualquier obligación impuéstale por la ley, o que a sabiendas ofreciere resistencia a dicho funcionario en el cumplimiento de su deber, empleando viva fuerza o violencia, incurrirá en una multa máxima de cinco mil dólares y en pena de presidio por un término máximo de cinco años."*

Since the English text prevails [2] and in view of the manner in which the appellant has raised the question, it must necessarily be determined whether the Spanish text is a correct version and, hence, whether or not the information, which follows the language of the Section in Spanish, states facts constituting a violation thereof.

In Bishop's New Criminal Law, Vol. I, p. 438, § 728, the word attempt is defined as "an intent to do a particular criminal thing, with an act toward it falling short of the

---

[2] See § 1 of Act No. 8, 1917, Vol. II, p. 210, § 13 of the Civil Code, 1930 ed. Section 84 of our Penal Code is an adaptation almost verbatim of § 69 of the Penal Code of California.

thing intended." She also Burdick's, Law of Crime, Vol. I, p. 114, § 103; *Alford* v. *Commonwealth*, 42 S. W. 2d 711; *People* v. *Lombard*, 21 Pac. 2d 955; and *Broadhead* v. *State*, 139 So. 115. On the other hand, the word *intentar* used in the Spanish context of § 84, according to the Dictionary of the Spanish Language, Real Academia Española, 17th ed., 1947, p. 729, means: "to intend to do something; to get it ready, to actually begin to do it; to procure or seek." As may be seen, the word *intentar* thoroughly conforms to the definition given to the word attempt by the aforesaid textwriters and the above-mentioned cases. The information followed the language of the statute. That was enough. *People* v. *Avilés*, 66 P.R.R. 278; *People* v. *Marcano*, 61 P.R.R. 139; *People* v. *Ortiz*, 17 P.R.R. 860; *Manss* v. *Superior Court*, 25 Cal. App. 533. Therefore, it stated facts constituting the offense punished by said Section.

■■ Upon realizing that the testimony of Juan Miranda Gómez, a witness for the prosecution, differed materially from his written testimony, the Prosecuting Attorney asked him whether he had previously testified under oath or not before the Municipal Judge of Coamo, to which the witness replied that he had testified before a policeman but not before the aforesaid Judge, yet acknowledging that the document presented to him bore his signature. In view thereof the Prosecuting Attorney called said Municipal Judge as a witness, who, over the objection of the defense, stated that he had taken said testimony from Miranda Gómez and that Miranda Gómez had signed it in his presence. The appellant contends now that the trial court erred in admitting the testimony of the Municipal Judge to that effect.

Pursuant to § 156 of the Law of Evidence (§ 518 of the Code of Civil Procedure, 1933 ed.) *"The party producing a witness* is not allowed to impeach his credit by evidence of bad character, *but he may contradict him by other evidence, . . ."* (Italics ours.) Besides, § 243 of the Code of Criminal Procedure provides that *"The party producing a witness* is not

allowed to impeach his credit by evidence of bad character; but *he may contradict him by other evidence.*" (Italics ours.) Since Miranda Gómez denied having signed the testimony before the Municipal Judge, there was nothing, under the aforesaid Sections, to prevent the Prosecuting Attorney from calling said officer to the witness stand to testify whether the testimony had been given before him or not. On the contrary, those Sections authorized him. Their provisions constitute in fact one of the exceptions to the general rule that a party cannot impeach his own witness. *Ellicot and Meredith* v. *Pearl*, 10 Pet (U. S.) 412, 9 L. Ed. 475; 58 Am. Jur. 442, § 797. *Cf.* § 159 of the Law of Evidence and 245 of the Code of Criminal Procedure, as well as *People* v. *Tirado*, 69 P.R.R. 361; *People* v. *Santos*, 69 P.R.R. 408, 415; *People* v. *Lebrón*, 61 P.R.R. 634, 650.

██ The appellant also contends that the lower court erred in not reducing the classification of the offense from a violation of § 84 of the Penal Code to aggravated assault and battery, as a result of the evidence for the People. This error was not committed either. The evidence before the court to that effect was in brief: that the policeman Domingo Torres Mattei caught Braulio Rivera showing a list of numbers to Carlos Mateo and having "a paper bag with a package of *bolita*" in his hands; that the policeman Torres Mattei arrested Rivera for a violation of the *Bolita* Act; that while he was taking him under arrest to the Municipal Court they went by the restaurant of the defendants and Rivera attempted to go in, the policeman stopping him; that then the defendant asked Rivera what was the matter with him and Rivera answered "that policeman Mattei is taking me arrested" and "get me some sureties"; that the policeman told Rivera to keep going, that he was arrested and the defendant forthwith slapped the policeman, striking him in the eye; that then the defendant José Ismael Zayas grabbed the policeman's belt, both engaging in a fight; that José Leonardo Zayas, the father, also hit him; that the

policeman fell down and they fought there until two men called Gierbolini and Siso took José Ismael Zayas away from him; that the defendant knew that Torres Mattei was a policeman despite the fact that the latter was dressed in civilian clothes; that the defendant knew him; that due to the intervention of the Zayases the bag which the policeman seized with the tickets disappeared; and that Braulio Rivera fled but was later arrested.

If policeman Torres Mattei had cause to believe that Braulio Rivera was committing an offense in his presence, he was empowered to arrest him. Section 116 of the Code of Criminal Procedure; *The People v. Ramos*, 18 P.R.R. 954. And if while taking Rivera to the Municipal Court he was assaulted by the defendant, in the manner disclosed by the evidence, the offense committed was a violation of § 84 and not aggravated assault and battery.

As we said in *People v. Ramos*, 13 P.R.R. 325, 329: ". . . the crime defined in section 137 of the Penal Code as well as that comprised under section 84 thereof, like the crime of assault where the aggravated circumstance consists in that the person assaulted is a public official, are in one respect entirely similar, and that is that the aggrieved person is a public official; but they differ in that the purpose of the two first mentioned is to prevent a public official from discharging a duty imposed by his office under section 137 without the use of threats or violence, and under section 84, with the use of such threats or violence, and such acts do not constitute the crime of assault upon a public official, although there be an attempt or threat to employ violence in the commission thereof." See also *People v. Cancel*, 54 P.R.R. 26; *People v. Brunet*, 48 P.R.R. 167; *People v. Lind*, 40 P.R.R. 745; *People v. Otero*, 20 P.R.R. 3; *People v. Valcourt*, 16 P.R.R. 624. Consequently upon being moved by the defendant to reduce the classification of the offense to aggravated assault and battery, the evidence before the court showed that the defendants had used violence to prevent the policeman from

performing his duty to take Braulio Rivera under arrest to the municipal court. The court, therefore, acted correctly in not reducing the classification of the offense.

In the fourth and last error assigned the appellant contends that "the verdict of the jury is not supported by and is contrary to the evidence." We have briefly sketched the evidence presented to the jury. We think that it is sufficient to support the verdict rendered.

The judgment appealed from will be affirmed.

Mr. Justice Snyder did not participate in the decision of this case.