**COMMONWEALTH of Kentucky, Movant,**

v.

**Billy SANDERS, Respondent.**

**Billy SANDERS, Cross-Movant,**

v.

**COMMONWEALTH of Kentucky, Cross-Respondent.**

**Nos. 86–SC–785–DG, 86–SC–1010–DG.**

Supreme Court of Kentucky.

Sept. 24, 1987.

David L. Armstrong, Atty. Gen., Cicely Jaracz Lambert, Asst. Atty. Gen., Frankfort, for movant and cross-respondent.

JoAnne M. Yanish, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for respondent and cross-movant.

STEPHENSON, Justice.

Billy Sanders was convicted of first-degree robbery and sentenced to ten years' imprisonment. The Court of Appeals reversed, directing an acquittal. We granted discretionary review on motion of the Commonwealth and reverse the decision of the Court of Appeals. We also granted a cross motion for discretionary review filed by Billy Sanders and affirm that judgment of the trial court.

A state narcotics officer came into contact with the appellee, Billy Sanders. The officer was introduced to Sanders as a bank robber from Detroit "hiding out from the law." Sanders, at that time, told the officer that he, too, was a bank robber and had several robberies in the planning stages. He was staking out some filling stations. Sanders asked the officer if he would go in with him on it. As a result of this conversation, the two men planned to rob a gas station at Belcher. This was one of the stations Sanders had staked out. The planning of the crime evolved to such a point that all the specifics were outlined by the officer. He suggested the time for the robbery, a specific escape route, and supplied Sanders with a disabled .45 pistol and a mask. Also, the officer drove Sanders to the service station. Sanders did not have a license or a car. Valium and beer had been supplied to Sanders by a police informant before the crime to calm him down.

At the service station, Sanders presented himself, with the disabled gun, to the attendant, handing her a paper bag which she filled with all the money at hand. The attendant, a police officer who had taken the place of the regular attendant, had been informed of the impending robbery and the fact that the pistol to be used was disabled. She testified, however, that she was "scared" during the robbery. After the robbery, Sanders was immediately apprehended.

Sanders argues first that he was entitled to a directed verdict on his defense of entrapment. The opinion of the Court of Appeals concluded that under the facts of this case there was insufficient evidence that Sanders was "otherwise disposed to commit" the crime of first-degree robbery and, further, that the criminal intent did not originate with Sanders.

We are of the opinion the decision of the Court of Appeals is erroneous in this respect.

The statute controlling this defense to a crime is KRS 505.010, which provides in pertinent part:

(1) A person is not guilty of an offense arising out of proscribed conduct when:

(a) He was induced or encouraged to engage in that conduct by a public servant or by a person acting in cooperation with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution; and

(b) At the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct.

For the purposes of this case, the pre-penal code law of entrapment is the same as KRS 505.010. *Alford v. Commonwealth,* 240 Ky. 513, 42 S.W.2d 711 (1931), stated that:

... It seems to be the general rule that where the criminal intent originates in the mind of the entrapping person and the accused is lured into the commission of the offense charged in order to prosecute him therefor, no conviction can be had; ....

and further:

... In the instant case the uncontradicted evidence shows that the criminal intent originated in the minds of appellants and that they acted of their own volition. The court therefore did not err in failing to give an instruction on entrapment.

See also other cases in Ky. Digest, Criminal Law, Key Number 37.

■ It is apparent that KRS 505.-010(1)(a) and (b), pertinent to this situation, is a codification of the common law. If the evidence is that the defendant otherwise is disposed to engage in the criminal activity, then inducement or encouragement does not constitute entrapment. Here, the officer testified that the idea for the robbery of the service station originated with Sanders. Sanders, testifying in his own defense, stated that the police informant was the one who first suggested the commission of the crime and that his statements testified to by the officer were merely to accommodate the police informant and that he never intended a robbery. Thus, we are of the opinion that a jury question was presented on the question of entrapment.

The critical test is not the extent of the police participation in planning and assisting in the crime, but whether the defendant was disposed to commit the crime regardless of any encouragement or inducement on the part of the authorities.

It is certainly of importance to determine who first suggested the commission of the crime. There is abundant evidence here that Sanders was disposed to commit the crime without any inducement or encouragement on the part of the authorities. The jury resolved the issue, and the Court of Appeals erred in holding that Sanders was entrapped as a matter of law.

Thus, we are of the opinion the inquiry should not center on the extent of the police participation in planning or encouragement as to the details of carrying out the commission of the crime, but rather on the defendant's disposition to engage in such criminal activity aside from police inducement or encouragement.

■ The second assertion by Sanders is that he should not have been convicted of first-degree robbery. KRS 515.020(1)(b) provides:

(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

.   .   .   .   .

(b) Is armed with a deadly weapon....

The Court of Appeals did not reach this issue which is presented by Sanders in his motion for discretionary review, which we granted in order to have the entire case before us.

It is established here that the pistol used in the robbery by Sanders was not capable of being fired. This was a sensible precaution in the circumstances of this case where Sanders had proposed stopping at this home to procure a pistol. Sanders argues that for the reason he used a disabled pistol he could not be found guilty of first-degree robbery. He relies on *Merritt v. Commonwealth*, Ky., 386 S.W.2d 727 (1965). There, in a case where the weapon used in the armed robbery may have been a toy gun, we construed "deadly weapon" as any object intended by its user to convince a victim that it is deadly and the victim is, in fact, convinced. *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1977), concluded that the penal code did not change existing law on the subject and that *Merritt* is as viable now as it was prior to the adoption of the code.

In our examination of *Merritt*, as it pertains to this situation, we observe that it is written from the standpoint of the victim. The victim is convinced or believes that the toy pistol is a real pistol; thus in law a deadly weapon for the purpose of armed robbery. We are of the opinion the facts

of this case are the other side of the coin. Sanders *believed* that the pistol was capable of firing; he did not know that it would not fire. His intent to commit the crime of first-degree robbery is not diminished by the fact that the pistol was incapable of firing and that the victim here knew that the pistol was not capable of being fired. He used the pistol to commit the robbery convinced that it was capable of being fired. The fact that the victim knew the true state of the weapon does not lessen his culpability. This is the other side of *Merritt* and is equally viable. We are of the opinion that the trial court properly submitted first-degree robbery to the jury.

We do not consider that the other issues asserted by Sanders merit discussion.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

All concur.