Timothy E. MACKEY, Jr., Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2012–SC–000378–MR.

Supreme Court of Kentucky.

Aug. 29, 2013.

Roy Alyette Durham, II, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General, James Hays Lawson, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

In the early part of 2012, Troy Gibson, a Muhlenberg County Deputy Sheriff, received complaints indicating that methamphetamine was being manufactured at a house located at 939 Gishton Road in Muhlenberg County, Kentucky. Officer Gibson believed that the Mackey family either presently owned or had previously owned this particular piece of property. Accordingly, Officer Gibson contacted a member of the Mackey family. The record does not reveal the family member's specific kinship to Appellant, Timothy E. Mackey, Jr. The relative explained to Officer Gibson that he no longer lived on the property, but nevertheless consented to a search of the house. Notably, the record does not reveal who actually held title to the property. When Officer Gibson arrived at the home, he noticed that the house was in an unlivable condition and concluded that the property was likely abandoned.

On February 5, 2012, Officer Gibson received a tip from an informant by the name of Michael Lambert. Appellant and Lambert were acquaintances. Lambert stated that Appellant was planning to manufacture methamphetamine at the 939 Gishton Road property later that night. Lambert explained that Appellant was in need of batteries and pseudoephedrine, two of the necessary ingredients needed to manufacture methamphetamine. Lambert told Officer Gibson that he would provide Appellant with crushed acetaminophen un-

der the guise of pseudoephedrine. Officer Gibson set up a surveillance of the property. As anticipated, Appellant and Lambert arrived at the property carrying methamphetamine precursors. As Appellant approached the garage entrance to the house, he was taken into custody. A search of Appellant's person incident to his arrest revealed eight lithium batteries, tubing, and a baggie of crushed pseudoephedrine. A subsequent search of the house uncovered other precursors, including anhydrous ammonia, coffee filters, starter fluid, and a bottle of liquid fire.

Appellant was subsequently indicted for one count of manufacturing methamphetamine, one count of possession of anhydrous ammonia in an unapproved container with the intent to use or manufacture methamphetamine, and being a first-degree persistent felony offender.

During the trial, Appellant testified on his own behalf. Appellant claimed that, on the night in question, it was Lambert who proposed that the two "cook" methamphetamine and split the finished product. Lambert allegedly had all the necessary ingredients to produce methamphetamine with the exception of anhydrous ammonia and batteries. According to Appellant, Lambert supplied him with money and transportation to purchase the needed batteries. Appellant further stated that he and Lambert found the anhydrous ammonia on the side of the road. After obtaining the required ingredients, they arrived at the 939 Gishton Road property to begin manufacturing the methamphetamine. Appellant claims that he was merely serving as a lookout for Lambert.

A Muhlenberg Circuit Court jury convicted Appellant of manufacturing methamphetamine, possession of anhydrous ammonia in an unapproved container with the intent to use or manufacture methamphetamine, and being a first-degree persistent felony offender. Appellant was sentenced to thirty years imprisonment. Appellant now appeals his conviction and sentence as a matter of right pursuant to Ky. Const. § 110(2)(b).

## Motion to Suppress

Appellant first argues that the trial court erred in denying his motion to suppress evidence obtained by the warrantless search of the house located at 939 Gishton Road. Appellant did not contest the lawfulness of his arrest or the search of his person incident to his arrest. A suppression hearing was held on the matter during which Officer Gibson was the only witness who testified. Gibson stated that he assumed the property was abandoned and, therefore, believed it was unnecessary to obtain a search warrant. Appellant did not testify at the suppression hearing. Appellant's counsel nevertheless argued that the property was not abandoned, that Appellant had an ownership interest in the property, and that Appellant had previously lived in the house as evidenced by the address listed on his driver's license. Appellant, however, did not introduce any evidence to prove his ownership or possessory interest in the property. The trial court found that since Appellant was living in another residence in Central City, Kentucky at the time of his arrest, he had abandoned any ownership interest in the property and had no standing to object to the warrantless search of the house.

 In reviewing a trial court's denial of a motion to suppress, we first determine whether the trial court's findings are supported by substantial evidence. *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998) (citing *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). If the trial court's factual findings are not clearly erroneous, then we conduct a de novo review of the trial court's applicability of the law to the facts. *Id.*

■ Section 10 of the Kentucky Constitution and the Fourth Amendment to the U.S. Constitution protect against unreasonable searches and seizures. In order to invoke this protection, one must have standing—a reasonable expectation of privacy in the area searched or the property seized. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is unreasonable for an individual to maintain an expectation of privacy in property that he or she has abandoned. *Watkins v. Commonwealth,* 307 S.W.3d 628, 630 (Ky.2010) (citing *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988)). "What constitutes abandoned property has to be determined on a case-by-case basis." *Watkins,* 307 S.W.3d at 630.

■ There is limited authority discussing the abandonment of one's residence within the context of the Fourth Amendment. *See Commonwealth v. Ousley,* 393 S.W.3d 15 (Ky.2013) (trash); *Blades v. Commonwealth,* 339 S.W.3d 450 (Ky.2011) (hotel room); *Watkins,* 307 S.W.3d at 628 (automobile). Notwithstanding the lack of case law discussing this issue, we are certain that the law does not deem property abandoned simply because the owner is residing in another location. Such a holding would, in practical effect, open the door for law enforcement throughout this Commonwealth to conduct warrantless searches of other types of dwellings, such as uninhabited houses converted to storage buildings.

However, we need not determine whether Appellant abandoned the house in question because we find that Appellant did not have sufficient standing due to his failure to establish a possessory or ownership interest in the property. *See Ordway v. Commonwealth,* 352 S.W.3d 584, 592 (Ky. 2011) (holding that appellant failed to establish standing to challenge search of an apartment where he was a frequent visitor); *Sussman v. Commonwealth,* 610 S.W.2d 608, 612 (Ky.1980) (concluding that appellant lacked standing to challenge search of girlfriend's apartment, though she gave him a key to the residence for limited use); *Combs v. Commonwealth,* 341 S.W.2d 774, 775 (Ky.1961) (finding that appellant lacked standing to challenge search of residence owned by grandfather, though he lived in the home).

While there are several distinguishing facts to the case *sub judice, Foley v. Commonwealth,* 953 S.W.2d 924 (Ky.1997) provides us with analogous reasoning. In *Foley,* an officer conducted a warrantless search near an underground cistern to uncover the remains of four bodies. *Id.* at 933. The appellant claimed that he owned the property and that his father conveyed it to him shortly before the search. *Id.* The appellant, however, was not the recorded owner of the property. *Id.* The appellant's father testified that he conveyed the property to the appellant by way of an unrecorded deed. *Id.* We upheld the trial court's determination that the appellant failed to provide sufficient evidence that he held title or maintained a possessory interest in the property searched. *Id.* at 934.

Likewise, Appellant failed to provide the trial court with any supporting documentation or testimony to prove that he had an ownership or possessory interest in the 939 Gishton Road property. Unlike Foley, Appellant did not even contend that he possessed any kind of deed, recorded or unrecorded. The only evidence which lends credence to Appellant's position is his driver's license which listed the property as his address. Yet, Appellant conceded that he was residing at another residence in Central City, Kentucky at the time of the search. At most, the evidence only related that Appellant had apparently

lived on the property at some point in the past. Based on the lack of evidence indicating that Appellant owned or lived on the property at the time of the search, we believe the trial court was correct in denying Appellant's motion to suppress. Consequently, while we have serious questions as to the trial court's abandonment finding, we agree with its ultimate conclusion that Appellant lacked sufficient standing to challenge the validity of the warrantless search. This Court is not bound to reverse the trial court simply because we disagree in its analysis, as long as there is some sound alternative reason for upholding the search. *See McCloud v. Commonwealth,* 286 S.W.3d 780, 786, n. 19 (Ky. 2009) ("[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record.").

### Voir Dire

■ Appellant's next assignment of error is that the trial court failed to strike for cause two jurors who indicated that Appellant would have to prove his innocence. As a result, Appellant maintains that he was forced to use two of his nine peremptory strikes to remove the jurors in order to ensure a fair and impartial jury.

■ Appellant, however, has failed to preserve this alleged error for our review. As we stated in *Gabbard v. Commonwealth,* "[I]n order to complain on appeal that [the defendant] was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike, the defendant must identify on his strike sheet any additional jurors he would have struck." 297 S.W.3d 844, 854 (Ky.2009). Appellant admits that he failed to note on the strike sheet the two additional jurors whom he would have removed had the motion to strike been granted. Therefore, we decline to review whether the trial court erred in denying Appellant's motions to strike.

### Directed Verdict

■ Lastly, Appellant argues that the trial court erred in denying Appellant's motion for a directed verdict of acquittal. Appellant argues specifically that the Commonwealth failed to disprove entrapment, thereby rendering him entitled to a directed verdict as matter of law. Unfortunately, Appellant has failed to preserve this argument for our review. The record reveals that Appellant moved for a directed verdict by making a general argument that the Commonwealth failed to prove the elements of the crimes charged. At no point did Appellant argue that the proof presented by the Commonwealth established that he was not guilty as a matter of law based on the defense of entrapment. In fact, Appellant failed to even request an entrapment instruction. As we stated in *Pate v. Commonwealth,* "CR 50.01 requires that a directed verdict motion 'state the specific grounds therefor[,]' and Kentucky appellate courts have steadfastly held that failure to do so will foreclose appellate review of the trial court's denial of the directed verdict motion." 134 S.W.3d 593, 597–98 (Ky.2004).

■ Despite Appellant's failure to preserve this argument, we will nevertheless perform palpable error review pursuant to RCr 10.26. A directed verdict of acquittal is improper when "the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty...." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). The trial court must draw all fair and reasonable inferences in favor of the Commonwealth, reserving questions of credibility and weight of the evidence for the jury. *Id.*

Entrapment is a defense delineated in KRS 505.010 which provides, in pertinent part, as follows:

(1) A person is not guilty of an offense arising out of proscribed conduct when:

(a) He was induced or encouraged to engage in that conduct by a public servant or by a person acting in cooperation with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution; and

(b) At the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct.

 "The question of entrapment is generally one for the jury, rather than for the court." *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (citing *Sherman v. United States,* 356 U.S. 369, 377, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958)). However, if the defendant is tricked or induced into committing a crime at the behest of the governmental actor and the criminal intent originates with the governmental actor, then a conviction for the crime is inappropriate. *See Alford v. Commonwealth,* 240 Ky. 513, 42 S.W.2d 711 (1931). Conversely, "[I]f the evidence is that the defendant otherwise is disposed to engage in the criminal activity, then inducement or encouragement does not constitute entrapment." *Commonwealth v. Sanders,* 736 S.W.2d 338, 340 (Ky.1987).

We find that Appellant was not entitled to a directed verdict since evidence was presented to the jury that the criminal intent originated with Appellant and that he was predisposed to engage in the crimes to which he was charged. Indeed, the jury heard testimony that it was Appellant's idea to manufacture methamphetamine on the property and that it was Appellant who possessed a majority of the required ingredients. In addition, Appellant admitted to Officer Gibson that the majority of the precursors were his or that

he had obtained them. Furthermore, it was not as if Officer Gibson convinced Lambert to arrange the criminal activity on the night in question. It was Lambert who contacted Officer Gibson concerning Appellant's plans. Appellant also admitted to having a serious drug problem for most of his adult life. The only evidence suggesting that Appellant was entrapped was his own unpersuasive testimony.

In drawing all fair and reasonable inferences in favor of the Commonwealth and accepting Gibson's testimony as true, we do not believe a reasonable juror could have concluded that Appellant was entrapped and not guilty of the crimes charged. Thusly, we find no palpable error in the trial court's denial of Appellant's motion for a directed verdict.

For the forgoing reasons, the Muhlenberg Circuit Court's judgment is hereby affirmed.

All sitting. All concur.